IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KEVIN ANTHONY MOORE,
    Plaintiff,

vs.                                                                 Case No.: 5:10cv38/MW/EMT

MIKE HARRIS, Unit Manager, and
WARDEN MARK HENRY of FCI Marianna,
    Defendants.
_____/

## ORDER and REPORT AND RECOMMENDATION

In a Report and Recommendation issued January 18, 2013, this court recommended to the district court that Defendants' pending Motion to Dismiss be denied (*see* doc. 64, Defendants' motion; docs. 67, 74, 75, and 80, Plaintiff's response and supplemental responses; and doc. 82, January 18, 2013, Report and Recommendation).[1] Defendants filed an objection to the Report and Recommendation (doc. 85), following which the district court remanded the case to the undersigned to consider Defendants' argument in the first instance (doc. 86). Upon remand, finding Defendants' objection to be well taken, this court shall vacate the January 18, 2012, Report and Recommendation and in its stead enter the instant Report which recommends granting Defendants' motion to dismiss.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Kevin Anthony Moore is a non-prisoner proceeding pro se in this action. The complaint currently at issue is Plaintiff's fourth amended complaint (henceforth "complaint") and names as Defendants Unit Manager Mike Harris and former Warden Mark Henry of Federal Correctional Institution Marianna ("FCI Marianna") (doc. 42). Plaintiff was formerly incarcerated

---

[1] The matter was referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).

at FCI Marianna on drug charges, and the basis for his complaint is that he was improperly required to register as a sex offender based on a state conviction before his release from federal custody.

Plaintiff alleges that on or about August 2, 1999, Mike Harris presented Plaintiff with a Sex Offender Registration Form and told him that he would need to sign it before he was released from prison (doc. 42 at 3).[2] Plaintiff did not agree that he should sign the form and showed Harris a copy of his Pre-Sentence Investigation Report ("PSR"), which reflected that the charge allegedly giving rise to the need to register was a simple battery (*id.*). Harris told Plaintiff that he could not be released until he signed the form, which Plaintiff states that he then did "under duress," marking "I disagree" in three places on the form (*id.* at 3, exhs. at 2–3).[3] After the form was signed, it was sent to then-warden Mark Henry for his signature and distribution to state and local authorities (*id.* at 3). Plaintiff asserts that Henry should have seen that Plaintiff indicated his disagreement and looked into the reason for this rather than signing off on the form as it was presented to him (*id.*). Other than noting "I disagree" on the form, Plaintiff does not indicate that he attempted to discuss this matter with anyone other than Defendant Harris. Plaintiff was released on September 13, 1999, but it was not until 2005 when he applied for a contractor's license that he was arrested for his failure to register as a sex offender (*id.*). He states that up until that point he "was never contacted," and thus apparently believed that the matter had been resolved due to his written objection on the form.[4] Plaintiff reports that he was released from arrest after local law enforcement reviewed the charges and determined that Plaintiff's previous charges did not warrant sex offender registration (doc. 42 at 5).

---

[2] Page references are to Plaintiff's submission as reflected in the court's electronic docketing system.

[3] The attachments to Plaintiff's complaint are neither labeled nor separated into individual "exhibits." Therefore, to reference these attachments the court will refer to "exhs.," meaning the conglomeration of exhibits to the complaint, and the page number of the referenced document as reflected in the court's electronic docketing system.

[4] This conclusion as to Plaintiff's belief is supported by other court documents. As discussed more fully *infra*, Plaintiff filed an objection to this court's recommendation of dismissal of a 2008 case in which he brought similar claims. In the objection Plaintiff suggested that he assumed for several years following his release that he was not required to register. *See* Moore v. Lappin, 3:08cv344/MCR/EMT, doc. 21 at 3–4. However, the court notes that in the prior case Plaintiff identified 2003 rather than 2005 as the year he became aware that the Federal Bureau of Prisons had indeed submitted the Sex Offender Registration Form to state law enforcement. *Id.*

Case No.: 5:10cv38/MW/EMT

The Florida Department of Law Enforcement ("FDLE"), however, continued to pursue the issue (*id.*). The FDLE sent Plaintiff a form to register every six months, warning him that if he failed to comply he would face third degree felony charges (*id.*).

Plaintiff filed a petition in state court in 2005 seeking to have the registration requirement removed, but the court determined that it had no jurisdiction to resolve the matter (doc. 42 at 5). Plaintiff then filed a declaratory judgment action in federal court in 2008 seeking to have the registration requirement removed, but this case was also dismissed (*see* Moore v. Lappin, Case No. 3:08cv344/MCR/EMT, doc. 22). Plaintiff visited FDLE headquarters in Tallahassee in an attempt to resolve this issue, but he was told that FDLE could not remove the registration requirement due to the form Plaintiff had signed—under duress, he alleges—in August of 1999 (doc. 42 at 4–5). Plaintiff's name was on the sex offender website and visible to family, friends and acquaintances for years, including five years as a fugitive who had not registered and five years as a registered offender (*id.* at 5). It was not until 2010, when Plaintiff contacted the office of the United States Attorney in Pensacola, Florida, that Assistant United States Attorney ("AUSA") Nancy Hess called the FDLE and spoke to Alan Moses, an analyst, that Plaintiff was finally removed from the website (*id.*).

In his statement of claims, Plaintiff contends that Harris and Henry had no legal authority to require him to sign the form or report this information to law enforcement based on his misdemeanor battery conviction (doc. 42 at 6). He also asserts that the fact that he was required to register as a sex offender from 1999 through 2010 violated his rights under the Due Process Clause (*id.* at 8). He seeks punitive and compensatory damages in the amount of $12,000,000.00, to compensate him for defamation of character and loss of enjoyment of life due to the torment he suffered after having been improperly required to register as a sex offender (*id.*).

Plaintiff has appended numerous documents to his complaint, which are pertinent to the undersigned's recommendation and thus are summarized as follows. First is the first page of a Sex Offender Release Notification form dated August 9, 1999, addressed to State and Local Law Enforcement Officials and to the State Sex Offender Registration Official which, among other things, describes the battery that purportedly gave rise to the requirement that Plaintiff register as a sex offender (doc. 42, exhs. at 1).[5] Also included is the Sex Offender Registration and Treatment

---

[5] It is not clear whether there are additional pages to the form that have not been included.

Notification that Plaintiff signed with the notation "I disagree" in three places on August 2, 1999 (*id.* at 2–3). Plaintiff has also attached a document listing standard conditions of supervision for federal offenders, signed by Warden Mark Henry (*id.* at 4).

As evidence of his attempt to resolve this matter as long ago as 2004, Plaintiff submitted a copy of a memo from the Clerk of Circuit Court for Escambia County, Florida, dated April 1, 2004, confirming that the charges of felony sexual battery in case 1990-CF-002433-A had been reduced to misdemeanor battery (*id.* at 5). The docket sheet in this state case is also appended, and it reflects that Plaintiff pleaded nolo contendere to simple battery on September 10, 1990 (*id.* at 6–7). The same docket sheet also reflects that on August 15, 2005, Plaintiff filed a pro se request for an order, in which he sought a court order directing that he be removed from the FDLE Sex Offender website and released from the requirement that he be classified as a sex offender, a copy of which is also attached (*id.* at 7, 8–9). Additionally, Plaintiff submitted a copy of the "State's Response to Court's Order to Show Cause," in which the state denied that it had ever requested that Plaintiff be required to register as a sex offender, and maintained that since this request had come from the federal government, it, rather than the state, would be the proper respondent (*id.* at 10–11). The state also noted that even if it had made such a request, the FDLE rather than the State's Attorney's office would be the proper respondent, as it is the FDLE that has ultimate control over who is listed on the sex offender registry (*id.*). The state court denied Plaintiff's request for an order on November 14, 2005 (*id.* at 12).

Also appended to the current complaint is a copy of the "Complaint for Declaratory Judgment" that Plaintiff filed in this court in 2008 (doc. 42, exhs. at 14–16). In that case, <u>Moore v. Lappin</u>, Case No. 3:08cv344/MCR/EMT (henceforth "<u>Lappin</u>"), Plaintiff asked this court to find that the Federal Bureau of Prisons ("BOP") had no legal authority to notify the State of Florida that Plaintiff should register as a sex offender (*id.*). In October of 2008, pursuant to court order, Plaintiff filed an amended complaint against Harley G. Lappin, Director of the BOP, based on essentially the same facts as are alleged in this case (*see* <u>Lappin</u>, doc. 10). He asserted two claims: (1) that the BOP had no legal authority to notify the State of Florida that he was required to register as a sex offender based on his 1990 conviction for misdemeanor battery; and (2) that the BOP's actions in causing him to register as a sex offender violated, and continued to violate, his rights to due process under the Fifth Amendment (*id.* at 4). Plaintiff sought no damages and merely asked for an order requiring the BOP to notify the appropriate officials in the State of Florida that he did not have to register as a sex

offender and that he should never have had to so register (*id*.). The only attachments to the Lappin complaint were the one-page memo, dated August 9, 1999, from the BOP to State and Local Law enforcement officials notifying them of Plaintiff's purported registration requirement and the list of the standard conditions of supervision for federal offenders signed by Warden Henry, both of which are also attached to the complaint in the case at bar (*id*. at 5–6). Plaintiff did not attach a copy of the form he signed or any documentation relating to the underlying conviction.

In September of 2009, this court issued a recommendation that the Lappin complaint be dismissed prior to service (*see* Lappin, doc. 18). The court construed Plaintiff's complaint as encompassing both a constitutional claim under Bivens,[6] and a claim pursuant to the Administrative Procedures Act ("APA"). It determined that Plaintiff's Bivens claim was untimely, and therefore frivolous, declining to find that the doctrine of either equitable tolling or continuing violation applied (*id.* at 4–6). A similar analysis was applied to Plaintiff's APA claim, with the court again concluding that there was nothing "apparent from the face of the amended complaint" to suggest that the extraordinary remedy of equitable tolling or the continuing violation doctrine would apply (*id*. at 6–7).[7]

Plaintiff filed an objection to the court's recommendation in Lappin. He argued that: (1) he had filed his complaint within the statute of limitations period; (2) equitable tolling should apply because he had not learned that the BOP actually submitted the form to state and local law enforcement for several years, and until then he had believed the matter was resolved; and (3) the continuing violation doctrine should apply because each time Plaintiff was required to re-register, the injury continued (Lappin, doc. 21 at 3–5). The district court adopted this court's recommendation without further discussion of Plaintiff's objection (Lappin, doc. 22). Plaintiff appealed, but he later abandoned his appeal, and it was dismissed in April of 2010 for want of prosecution (*see* Lappin, docs. 24, 37).

---

[6] Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[7] The court noted in its recommendation that the only impetus for Plaintiff's bringing the action at that time appeared to be his discovery of two lower court cases from other districts that would have supported his position (Lappin, doc. 18 at 6 n.9). It is clear from the record in this case that Plaintiff continued his efforts to have the registration requirement rescinded even after the dismissal of Lappin.

Also included with Plaintiff's complaint in the instant case is a copy of the judgment in Plaintiff's federal criminal case, a printout of his profile on the Sex Offender Registry, and a copy of a letter Plaintiff wrote "to whom it may concern" about the situation (*id*. at 17–20). Finally, there is a letter dated January 25, 2010, from Alan Moses, Government Analyst, Florida Offender Registration and Tracking Services (*id.* at 21). Mr. Moses states in this letter, a copy of which was sent to AUSA Nancy Hess, that the FDLE had determined that Plaintiff "no longer meet[s] the requirement to register in Florida as a sexual offender" and as such FDLE had removed him from the Sexual Offender Internet Registry Site (*id.*). Moses further states that the FDLE had initially required Plaintiff to register based on the BOP's Sexual Offender Registration and Treatment Notification form that Plaintiff signed on August 2, 1999 (*id.*). However, pursuant to the passage of the Adam Walsh Act[8] and further clarification with the BOP, the FDLE determined that Plaintiff did not meet Florida's requirements for registration (*id.*).

In their motion to dismiss, Defendants assert that, given the court's prior determination in Lappin, Plaintiff is collaterally estopped from bringing this claim. Alternatively, they argue that even if collateral estoppel does not apply, the statute of limitations still precludes this case because the initial "injury" dates back to events that occurred in conjunction with Plaintiff's release from FCI Marianna in 1999. Finally, Defendants assert that there is no basis for the application of equitable tolling. In its January 18, 2013, Report and Recommendation, this court rejected Defendants' contentions that the doctrine of collateral estoppel barred Plaintiff's claim for damages. The court also rejected Defendants' argument that Plaintiff's claim was time-barred. Stating that any claim for damages filed before Plaintiff was removed from the sexual offender registry in 2010 was arguably premature, the court relied on Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), to conclude that Plaintiff's claim for damages did not accrue until 2010 and thus his complaint filed in February 2010 was timely. The court therefore recommended that Defendants' motion to dismiss be denied (doc. 82). Objecting to this recommendation, Defendants contend that the rule announced in Heck does not apply to extend the accrual date of Plaintiff's claim for damages and thus

---

[8] The Adam Walsh Child Protection and Safety Act, or the Adam Walsh Act, codified at 42 U.S.C. § 16901 *et seq.*, establishes a comprehensive national system for the registration of sex offenders and offenders against children.

their motion to dismiss Plaintiff's instant complaint should be granted because the claim is time-barred.

ANALYSIS

Title 18 U.S.C. § 4042(c) requires the BOP to notify state and local authorities of a person's release if the individual was convicted of certain crimes, including sexual offenses. In addition to the notification requirement, the statute requires the designated sex offender to register in the place in which he will reside. 18 U.S.C. § 4042(c)(2)–(3). The statute further provides that, "The United States and its agencies, officers, and employees shall be immune from liability based on good faith conduct in carrying out this subsection." 18 U.S.C. § 4042(c)(5).

The Congressional purpose of this statute was to supplement the states' own sex offender registries with persons convicted of federal sex offenses. *See* Fox v. Lappin, 409 F. Supp. 2d 79, 85, 86 (D. Mass. 2006). The BOP, however, cannot designate a federal prisoner as a sex offender under § 4042(c) based on a state sex offense. Fox, 409 F. Supp. 2d at 86; Simmons v. Nash, 361 F. Supp. 2d 452 (D. N.J. 2005). And, while the BOP is free to notify the state as to a released inmate's prior sex offenses, the BOP cannot require the inmate to register as a sex offender with a particular state. Fox, 409 F. Supp. 2d at 87. In both Fox and Simmons, the petitioners were current inmates challenging their classifications as a sex offender. Both petitioners prevailed on their claims, and declaratory judgments were entered in their favor.

Collateral Estoppel

Collateral estoppel, or issue preclusion, protects litigants form the burden of relitigating an identical issue with the same party and serves to promote judicial economy by preventing needless litigation. CSX Transp. Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1317 (11th Cir. 2003); *see also* Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, ___ F.3d ___, No. 10-15140, 2012 WL 6629202 (11th Cir. Dec. 20, 2012) (citing CSX). Collateral estoppel applies where the following four prerequisites are met: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. CSX Transp., 327 F.3d at 1317; Miller's Ale House, 2012 WL 6629202, at *4.

With respect to the first prong, Defendants argue that the issue is "whether the statute of limitations applies to bar the Plaintiff's present lawsuit" (doc. 64 at 6). This does not go far enough in describing the issue now at stake. In <u>Lappin</u>—a case that was dismissed <u>prior to service</u>, pursuant to 28 U.S.C. § 1915(e)(2)(B) and due to lack of subject matter jurisdiction—the court was presented with the question of whether Plaintiff's request for declaratory relief aimed at the Director of the BOP was barred by the statute of limitations. In the case at bar, the issue is whether Plaintiff's request for monetary damages against two individual BOP employees is similarly barred. Having framed the issue in this way, the court concludes that the doctrine of collateral estoppel does not apply. *See* <u>CSX</u>, 327 F.3d at 1318 (court stated that it "need not further track the preclusion requirements" after concluding that the facts in the two cases it was considering were materially different).

<u>Statute of Limitations</u>

To recapitulate, the initial source of Plaintiff's injury was Defendant Harris informing Plaintiff that his release would be delayed if he did not sign the Sex Offender Treatment and Registration Form in August of 1999, and Defendant Henry's approval of the form despite Plaintiff's noted "objection." If the BOP had not notified law enforcement of Plaintiff's release or of the alleged registration requirement (as Plaintiff apparently believed for some time was the case, despite his signature on the form), no injury would have occurred. Plaintiff did not learn until 2005, according to the allegations in the complaint in this case, that he was required to register as a sex offender. From 2005 through 2010, he made efforts to have this requirement removed, contacting attorneys for advice and submitting pleadings in both state and federal court (*see* doc. 42; <u>Lappin</u>, doc. 21). Finally, in January of 2010 he contacted the United States Attorney's office. AUSA Nancy Hess contacted Alan Moses who authored the letter dated January 25, 2010, indicating that the sexual offender registration requirement had been removed. Therefore it was not until 2010 that Plaintiff's position was "vindicated." The question thus remaining is when Plaintiff's cause of action for damages accrued.

In its previous Report and Recommendation, the court noted that in <u>Heck</u>, *supra*, the Supreme Court held that an action under section 1983 that by its nature challenges the lawfulness of a conviction or sentence is not cognizable unless and until the sentence or conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486–87. Such actions would include those in which the plaintiff seeks damages

directly attributable to his conviction or confinement, the plaintiff must negate an element of the offense of which he has been convicted in order to prevail, or the plaintiff contends that the statute under which he was convicted is unconstitutional. *Id.*; Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003); *cf.* Porter v. White, 438 F.3d 1294 (11th Cir. 2007) (plaintiff brought § 1983 action after criminal conviction was overturned due to Brady violation). Absent such an invalidation, the section 1983 suit must be dismissed. Heck, 512 U.S. at 486–87; *see also* Harden v. Pataki, 320 F.3d 1289, 1295 (11th Cir. 2003); Hughes, 350 F.3d at 1160.

In its prior Report and Recommendation this court extrapolated from Heck, applying it to the case at bar to conclude that Plaintiff's claim for damages accrued in 2010 and thus was timely filed. Upon reconsideration and review, and with the benefit of Defendants' objection, however, the court concludes that such an extension of Heck goes too far. As noted above, for Heck to be at issue the claim must imply the invalidity of an underlying conviction or sentence. In the unpublished case Eubank v. Leslie, 210 F. App'x 837, 841 (11th Cir. 2006), the Eleventh Circuit explained that Heck "held that a cause of action for such damages accrues only when 'the conviction or sentence has already been invalidated,' as by a reversal on direct appeal or a federal court's grant of a writ of habeas corpus. *Id.* On the other hand, where the suit will not demonstrate that an outstanding criminal judgment against the plaintiff is invalid, normal rules apply and the suit is allowed to proceed." Eubank, 210 F. App'x at 841. Here, as is clear from the court's prior and instant Reports, Plaintiff's claim that he was injured by Defendants' allegedly improper requirement that he register as a sexual offender implicates no underlying sentence or conviction. Accordingly, because Plaintiff's suit in this case will not demonstrate the invalidity of an outstanding criminal conviction, this case is not governed by Heck and should proceed under normal rules, including the rules involving the accrual of claims.[9] *See, generally,* Spencer v. Kemna, 523 U.S. 1, 118 S. Ct. 978, 988, 140 L. Ed. 2d 43 (1998) (explaining that not every civil action by former prisoner for damages tied in some way to his incarceration involves Heck's application); Morrow v. Federal Bureau of Prisons, 610 F.3d 1271, 1272 (11th Cir. 2010) (allowing case to proceed because the rule in Heck did not extend to case

---

[9] Moreover, as noted by the district court in its order of remand, the Eleventh Circuit has suggested that "the primary purpose of the sexual offender registration requirements is civil and regulatory, as opposed to penal, in nature." (doc. 86 at 3, citing United States v. W.B.H., 664 F.3d 848, 853 (11th Cir. 2011)).

where Plaintiff was not in custody and where Plaintiff's action, even if decided in his favor, would not imply the invalidity of his conviction or of the sentence imposed by his conviction). Because Heck does not apply here it cannot be used to extend the accrual date of Plaintiff's claim for damages to 2010. Rather, Plaintiff's claim should be deemed to have accrued in August 1999, when Plaintiff was required to sign the Sex Offender Registration and Treatment Notification, which he did under protest; it was at that time that Plaintiff knew that he had been injured and he knew that Defendants had caused his injury. Plaintiff's claim for damages in this action therefore should be time-barred, as the court similarly concluded in Lappin with respect to Plaintiff's claim for declaratory relief.

Moreover, equitable tolling should not apply here. "The doctrine of equitable tolling abates the harsh operation of the statute of limitations under certain circumstances in which barring a plaintiff's potentially meritorious action would be unjust." Justice v. United States, 6 F.3d 1474, 1475 (11th Cir. 1993). It "is an extraordinary remedy which should be extended only sparingly," and before a court may equitably toll a limitations period, the plaintiff must establish that tolling is warranted. *Id.* at 1479. As Defendants acknowledge, the apparent mistake about Plaintiff's status is regrettable and unfortunate, indeed highly so. Nevertheless, the record reflects that Plaintiff waited approximately six years—or until 2005—to seek redress from the courts for an injury of which he had been aware since 1999. Nothing prevented Plaintiff from acting sooner, yet he did not. Under these circumstances, the extraordinary remedy of equitably tolling the limitations period should not be applied. *See* Justice, 6 F.3d at 1475, 1479.

In summary, this court concludes that Plaintiff's claim for damages in the instant case is time-barred. The court therefore recommends that Defendants' motion to dismiss be granted.

Accordingly, it is **ORDERED** that:

The Report and Recommendation dated January 18, 2013 (doc. 82) is **VACATED**.

And it is respectfully **RECOMMENDED** that:

1. Defendants' Motion to Dismiss (doc. 64) be **GRANTED**.
2. Judgment be entered in Defendants' favor and this case be closed.

At Pensacola, Florida this 1<u>st</u> day of March 2013.

                                         <u>/s/ *Elizabeth M. Timothy*</u>
                                         **ELIZABETH M. TIMOTHY**
                                         **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**